United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAY HEMRY,
Plaintiff,

v.

GOOGLE, LLC,
Defendant.

Case No. 26-cv-01611-PCP

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. Nos. 21, 22

Plaintiff Ray Hemry learned from an online forum about an application called Watsans, which Hemry downloaded from the Google Play Store, Google's main avenue for Android operating system smartphone users to download third-party applications. Hemry invested money through Watsans and ultimately lost money when the application turned out to be fraudulent. Based on Google's statements about trustworthiness of the applications in the Google Play Store, Hemry sues defendants Google and Alphabet (collectively "Google") for alleged violations of California's Unfair Competition Law (UCL), False Advertising Law (FAL), and common law negligence. Google now moves to dismiss Hemry's claims, arguing that they are barred by Section 230 of the Communications Decency Act. For the reasons discussed below, the Court grants Google's motion.

## BACKGROUND

The Google Play store is the main way that Android users download third-party apps onto their smartphones.[1] Complaint ¶ 16. Google Play's help pages tout its safety and security and the presence of "safe, high-quality apps." Complaint ¶ 19.

[1] For the purposes of Google's motion to dismiss, the Court assumes the truth of Hemry's complaint.

United States District Court
Northern District of California

Hemry alleges that he relied on Google's representations about the trustworthiness of third-party apps on Google Play and downloaded apps that resulted in "digital asset fraud." Complaint ¶ 31. Hemry explains that he joined an online investment discussion group to discuss investment strategies and stock tips, which led to his learning about a new investment app called "Watsans Exchange." Complaint ¶ 34. Watsans appeared on the Google Play Store in October 2025. Complaint ¶ 35. Hemry downloaded Watsans from Google Play in October 2025 and put money into it to buy cryptocurrency. Complaint ¶¶ 38, 39. Hemry relied on and reviewed Google's representations about the safety and security of Google Play apps. Complaint ¶ 40.

Hemry put increasingly large amounts of money into Watsans but would receive an error message whenever he tried to withdraw his money. Complaint ¶ 40, 41. Hemry subsequently learned that Watsans was part of a "pig butchering" scam, in which online fraudsters build a relationship with victims before eventually stealing their money, that did not meet Google Play's standards. Complaint ¶¶ 41, 42. Google removed the Watsans app from the Google Play store in January 2026. Complaint ¶ 43. Hemry alleges that scam apps often make developers' names include some reference to "5 [stars]" so that users think that the apps themselves have received thousands of five-star reviews from actual users. Complaint ¶ 44. Hemry alleges that Watsans application page within the Google Play Store exhibited this and other features suggestive of a scam application that should have put Google on notice of the application's true nature.

In pursuing his California state law claims, Hemry seeks to represent a class of "[a]ll persons who downloaded a cryptocurrency trading or investment app from the Google Play Store within the relevant statutory period to the date notice is sent to the Class and whose funds were stolen from the app by the app developers or agents working on their behalf (the 'Class Period')." Complaint ¶ 47.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to make a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing

United States District Court
Northern District of California

the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**ANALYSIS**

Section 230(c)(1) of the Communications Decency Act provides, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "Section 230(c)(1) immunity applies to (1) a provider or user of an interactive computer service, (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker, (3) of information provided by another information content provider." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)) (cleaned up).

The key issue here is whether Hemry "seeks to treat" Google "as a publisher or speaker." *Id.* This depends on the source of the duty Google allegedly violated. *Id.* at 740. The Court must "examine two things in looking at duty." *Id.* at 742. "First, what is the 'right' from which the duty springs?" *Id.* If the duty arises from a contract or the defendant's role as a product designer, "then § 230(c)(1) does not apply." Second, the court must "ask what is this duty requiring the defendant

United States District Court
Northern District of California

to do?" If the duty requires the defendant "to 'monitor third-party content'—or else face liability— then that too is barred by § 230(c)(1)." *Id.* (citing *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019)).

**I. Hemry's unfair competition and false advertising claims are barred by Section 230.**

Hemry's UCL and FAL claims charge Google with misrepresenting applications on the Google Play Store as "legitimate, safe, and secure" and as applications that "can be downloaded with confidence because of Google's vetting process and security standards." Complaint ¶ 69; *see also id.* ¶¶ 73–79.

As Hemry notes, his UCL and FAL claims are at least theoretically based on a duty that is distinct from its duties as a publisher—namely, Google's obligation to ensure that *its own* representations are not false and misleading. But the Ninth Circuit has recognized that even where a litigant seeks to hold an interactive computer service liable for its own statements, a "general statement" of a company's content moderation policy "is not a specific promise, but a [mere] description of its moderation policy, and thus protected from liability under § 230." *Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025). This is so because where a litigant relies on general statements of content moderation policy rather than specific, enforceable promises, the duty that the litigant seeks to impose on the defendant involves precisely the kind of content moderation regulation that Section 230 protects from liability. In *Calise*, for example, the Ninth Circuit held that plaintiffs' UCL claim was barred by Section 230 because the defendant's failure to prevent advertising of illegal conduct, even if forbidden by the UCL, "not only touche[d] on quintessential publishing conduct, but it [was] also indeed the very conduct that § 230(c)(1) addresses." 103 F.4th at 744.

Here, Hemry challenges general statements of Google's content moderation policy rather than specific promises. Hemry points out that Google has touted itself as prioritizing user safety. *See* Complaint ¶¶ 18–26. Google made representations that "(a) Google Play is a 'safe and trusted' platform; (b) every app on Google Play undergoes rigorous safety review, including over 10,000 automated and human-reviewed safety checks; (c) Google Play Protect scans over 200 billion apps daily to protect users from malware and harmful applications; (d) Google does not allow apps that

'expose users to deceptive or harmful financial products and services'; and (e) financial apps on Google Play comply with all applicable laws and regulations." Complaint ¶ 74. All of these descriptions of Google's content-moderation practices are general statements describing its overall practices and policies rather than specific promises to Hemry.[2] Google could put apps through safety reviews and check, scans apps to protect users from malware, forbid harmful apps, and ask that all apps comply with all relevant laws, while still hosting dangerous apps despite its best efforts.

Hemry argues that his complaint alleges that Google promised to take "specific steps … to determine whether an application should be banned." Opposition at 10. Hemry alleges that Google falsely told users that it performs more than 10,000 safety checks on each app before listing, that developers of financial apps must complete the Financial Features Declaration and demonstrate regulatory compliance before listing, and that these processes should ensure that only legitimate financial apps are available on Google Play. But the paragraphs of Hemry's complaint either point to aspirational, general commitments to safety or paraphrase Hemry's understanding of what Google promised, rather than what Google actually said. *See* Complaint ¶¶ 18–26, 40. This case is therefore unlike the Ninth Circuit's decision in *Estate of Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1173 (9th Cir. 2024), where the platform made a specific promise to "unmask the identity of any user who sent harassing messages to others." *Id.* at 1178–79 (internal quotation marks omitted).

While Hemry suggests that the appearance of Watsans in the Google Play store notwithstanding the evidence of its fraudulent nature in its store listing gives rise to an inference that Google was not conducting the promised 10,000 safety checks or requiring evidence of regulatory compliance, he has not pleaded any specific facts demonstrating that Google was not acting in accordance with its policies. Without such allegations, his argument that the Court should infer noncompliance from Watsans's mere appearance in the store would effectively

[2] Indeed, a number of the supposed promises were not contained in any consumer-directed statements but were instead in Google's communications to developers regarding the Google Play policies to which they were subject.

impose precisely the kind of strict liability for the publishing of third-party material that Section 230 protects from liability. Under *Calise* and *Doe v. Grindr*, such claims are preempted by Section 230.

Accordingly, the Court grants Google's motion to dismiss Hemry's UCL and FAL claims.

**II. Hemry's negligence claim is barred by Section 230.**

Hemry also alleges that Google was negligent when it undertook to review third-party apps but failed to exercise reasonable care in performing that undertaking. Complaint ¶¶ 80–87.

This claim is also barred by Section 230. The Ninth Circuit has repeatedly emphasized that Section 230 protects an interactive computer service provider from liability to the extent that liability "would require [the service] to actively vet and evaluate third-party" content. *See Calise*, 103 F.4th at 744; *Doe v. Grindr*, 128 F.4th at 1152–53; *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097–98 (9th Cir. 2019). Hemry's theory is that Google should have reviewed third-party applications on its Google Play Store with greater care, but the Ninth Circuit has made clear that Section 230 protects conduct arising from the review of third-party applications hosted by interactive computer service providers. Indeed, permitting liability on such a theory could discourage such providers from engaging in any form of content moderation—the negative disincentive that Congress specifically sought to eliminate through the enactment of Section 230. *See Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163–64 (9th Cir. 2008) ("In passing section 230, Congress sought to spare interactive computer services this grim choice [between incurring liability for moderation or not moderating and allowing inappropriate posts] by allowing them to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete."); *see also* 47 U.S.C. § 230(c)(2).

**III. Google's Request for Judicial Notice.**

Google requests judicial notice of ten documents, including certain Google policy statements or blog posts as well as a state court order dismissing a similar case. Hemry does not oppose the request. Because all of the documents are either incorporated by reference or publicly available from a source whose accuracy cannot reasonably be questioned and whose contents can

be accurately determined, the Court grants Google's request.

## CONCLUSION

For the reasons stated above, the Court grants Google's motion to dismiss and request for judicial notice. Dismissal is without prejudice. If plaintiff wishes to file an amended complaint, he must do so within 28 days from the date of this order.

**IT IS SO ORDERED.**

Dated: September 28, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California